## Cordes's Estate.

*Survivorship — Common disaster—Presumption—Evidence—Descent and distribution.*

1. There is no presumption of survivorship where several persons perish in a common disaster, notwithstanding differences in age, sex and strength. The fact of survivorship must be proved.

2. The general doctrine of no presumption may be overcome by evidence and inferences to be drawn from the condition of the respective bodies and the places in which they are found, together with the difference in physical condition of the persons at the time of the disaster.

Audit of account. O. C. Allegheny Co., Nov. T., 1922, No. 309.

*Robert F. Graham,* for accountant; *Albert C. Hirsch,* for legatees.

MILLER, P. J., Jan. 6, 1923.—The question is whether there was any survivorship as between this decedent and his wife, who lost their lives in the same disaster.

### The facts.

The decedent and his wife were found dead in their home in the City of McKeesport on Dec. 21, 1921. He was aged sixty-one, and his wife seventy. They had been married but a short time before, each having been previously married. They lived alone in an old and apparently poorly constructed dwelling at No. 628 Hartman Street. Neither left issue to survive.

Neither of them having been seen by their neighbors for some days, the Police Department of the City of McKeesport was notified. Officers were sent to the residence, who, finding the doors and windows closed, forced an entrance through the kitchen and immediately ascertained that the building was filled with the fumes of gas. After opening the windows, they went through the

different parts of the house, finding gas everywhere, and eventually came to a bed-room, which they forced open, and there found the decedent lying alongside the door with his feet under the bed, his trousers partly pulled to his knees, his head lying in close proximity to a small gas stove which was near the ventilator that came up from the kitchen, with every indication that the decedent had been dead for some days. They found Mrs. Cordes in bed clothed in her undergarments, also dead and apparently dead for some length of time. They found the gas stove in the room burning very low.

There was no evidence of a leak in the gas main outside of the building, but it was apparent that the casualty occurred by reason of the escaping gas from the gas stove, which was found burning when the bodies were discovered. The gas stove had no flue-pipe nor any means of carrying away excess fumes.

The decedent was a man of excellent health, strong and rugged, who worked every day, and had not been treated by physicians more than three times in twenty-one years. The wife, on the other hand, was under the care of the physician for a long period of time. She suffered from chronic rheumatism and bronchitis, was very stout, possibly seventy-five pounds heavier than her normal weight, and had an enlarged heart; she had difficulty in breathing and suffered more from overweight than from any other chronic cause; according to the testimony of the physician, the decedent would live longer than his wife, both being subject to the same deadly fumes under similar circumstances. This inference from the opinion of the physician is further borne out by the fact that the husband's body, having been found partially dressed on the floor, raises a clear presumption that he was partially overcome by the fumes and sought to turn off the gas, getting up and dressing in part, while the wife at that time was so overcome as not to be conscious, and raises a further presumption that she died first. This conclusion is further buttressed by the opinion of the physician that if both bodies had been lying in bed, death having resulted from asphyxiation, the husband's age and his rugged strength enabled him to overcome for a longer period the effect of the gas than was the case of his wife.

The decedent left collateral heirs, whose names, relationship and residence are set forth in the audit statement. His wife, who seems to have had a separate estate, is represented at this hearing by her administrator.

The doctrine of the common law, where several persons perish in a common disaster, notwithstanding differences of age, sex and physical strength, is that there is no presumption of survivorship, but the fact must be proved by the party asserting it: 13 Cyc., 308. This is followed in Clymer's Estate, 16 W. N. C. 36. The general doctrine at common law, and which seems to be the rule in Pennsylvania, of no presumption of survivorship in the case of a common disaster, is overcome by the evidence here and the inferences to be reasonably drawn therefrom; and they are, that the condition of, and places in which, the respective bodies were found, coupled with the difference in the physical condition between the husband and the wife, clearly indicate that he survived.

Even if the facts did not indicate survivorship in the husband, and the common law doctrine, very fully discussed in Sweeney's Estate, 78 Pa. Superior Ct. 417, [obtained] that there was no presumption of survivorship in either of the parties in the case at bar, and that both died at the same identical instant, it would follow that the estate of which decedent died possessed goes to his next of kin, and could not go to his wife or her next of kin.